J-S17001-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JERRY L. FRAZIER | : | |
| | : | |
| Appellant | : | No. 3130 EDA 2025 |

Appeal from the PCRA Order Entered December 3, 2025
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0601421-2003

BEFORE: PANELLA, P.J.E., STABILE, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED JULY 8, 2026**

Jerry L. Frazier appeals from the order entered in the Philadelphia County Court of Common Pleas on December 3, 2025, dismissing his serial petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, as untimely. Because we agree with the PCRA court that Frazier's petition was untimely and he failed to plead and prove an exception to the PCRA time-bar, we affirm the order dismissing the PCRA petition.

We previously summarized the factual and procedural history of this matter from our review of Frazier's second PCRA petition in 2021 as follows:

> On March 15, 2003, Jose Oquindo (Oquindo) was shot and killed outside of his house in Philadelphia. Earlier that day, Oquindo had argued with a male who had been driving a white Suburban SUV. At 11:15 p.m., shortly before the shooting, Oquindo and his fiancé, Wanda Figueroa (Figueroa), saw the white Suburban SUV

---

[*] Retired Senior Judge assigned to the Superior Court.

drive by their house and park further down the street. Oquindo told Figueroa that he had been arguing with the man in the white Suburban SUV. He later pointed out the man to Figueroa when he saw him standing on the street corner.

Oquindo knew Frazier, whose nickname was "Man-Man," prior to the shooting. Figueroa had previously seen Frazier around the neighborhood but did not know his name. At approximately 11:30 p.m. on the night of the shooting, Oquindo and Figueroa were standing at the door to their house and looking toward the bar across the street when Oquindo pointed to Frazier and said, "That is Man-Man." They watched Frazier walk to a group of approximately ten people who were standing outside of the bar. Frazier then called out to Oquindo and asked him to come over to talk and Oquindo left the house to speak with him.

Figueroa went back inside and closed the door to the house but moments later, she heard multiple gunshots. She immediately opened the door and saw two men shooting at Oquindo as he ran back toward the house. She said that the shooters were wearing dark hoodies and one was a black male, but she was otherwise unable to identify anyone involved. She ducked down for cover while holding the door open for Oquindo, but he fell to the ground before he reached the door. Figueroa retreated into the house until the shooting stopped and then went back outside, where she saw Juan Carlos Colon (Colon) holding Oquindo's body. Oquindo had sustained numerous gunshot wounds and died shortly thereafter. Figueroa did not see Frazier during or after the shooting.

Prior to the shooting, Oquindo spoke for a few minutes with several neighbors who lived across the street, including George Medina (Medina) and Colon. Medina testified that he heard someone call to Oquindo immediately before Oquindo began walking toward the bar. He did not see who had called out to Oquindo. He then heard gunshots and saw two individuals shooting at Oquindo. Medina initially told police that one of the shooters was wearing a dark hoodie and drove a white Suburban SUV and that the other shooter was dark-skinned. He had previously seen the driver of the white Suburban SUV around the neighborhood and he knew that Oquindo had been arguing with him earlier that day. However, at trial, Medina contradicted his initial statement and testified that he did not see the driver of the

white Suburban SUV on the night of the shooting but had heard from someone else that he was there.

At trial, the Commonwealth played a recording of the 911 call Medina placed on the night of the shooting. The following exchange occurred:

**Q.** Is that your voice on the tape that says, "That's fucked up. Man Man called him."

**A.** He didn't call him, but that's what my cousin said, but he was nowhere around.

**Q.** Who was nowhere around?

**A.** Man Man.

**Q.** But you said that —

**A**. — [Colon] told me that when he came in the house, he said that Man Man had called him to the corner, but Man Man was nowhere around.

Medina later confirmed that he did not see Frazier on the street when he drove by only a few minutes before the shooting occurred. He stated that Colon told him that Frazier had called Oquindo over from the bar, but he did not think that was possible since Frazier was not outside at the time. Medina then testified that in his police interview when he said he had seen the man who drove a white Suburban SUV, he was, in fact, only repeating what his wife and Colon had told him.

Colon was the sole eyewitness who observed the shooting in full and identified Frazier as one of the shooters. Colon knew Frazier from the neighborhood and knew that his nickname was Man Man. On the night of the shooting, Colon spoke to Oquindo outside with Medina. Contrary to Medina's testimony, Colon testified that he saw Frazier crossing the street toward the bar as he and Medina were returning to their home. Colon then heard Frazier call out to Oquindo and say "Yo, Hose [sic], come over here." Oquindo spoke briefly with Figueroa before walking toward Frazier. Colon followed Oquindo to the bar because he was concerned that the man Oquindo had argued with earlier that day might be in the area. He

saw Frazier say to Oquindo, "What's the beef between you and my man?"

Colon testified that Frazier then pulled out a gun and began shooting at Oquindo, and two men nearby began shooting at Oquindo as well. Colon hid behind a nearby car and watched the three men chase after Oquindo and continue shooting. Colon then saw Frazier run away from the scene in one direction while the other two shooters ran away down a different street. Colon described the two additional shooters as wearing black hoodies and he said that two shooters were Puerto Rican and one was black. Colon testified that Medina agreed at that point that Frazier was the shooter. In his statement to detectives shortly after the shooting, Colon said that "Man Man" shot Oquindo and that he had known Man Man for approximately four or five months.

Investigators recovered 9-millimeter cartridges and 40 caliber cartridges from the crime scene. They determined that all of the 9-millimeter cartridges were fired from the same weapon and that all of the 40 caliber cartridges were fired from the same weapon. They also recovered additional broken bullet specimens that were too damaged to determine what weapon they had been fired from. Based on this evidence, investigators could say with certainty that at least two guns were used in the shooting, though there could have been more.

*Commonwealth v. Frazier*, 1064 EDA 2020, at *1-2 (Pa. Super. filed Jan. 28, 2021) (unpublished memorandum) (citations and footnotes omitted).

On May 7, 2004, following trial, a jury found Frazier guilty of first-degree murder, possessing an instrument of crime and conspiracy. The trial court subsequently sentenced Frazier to life imprisonment. On August 1, 2006, this Court affirmed Frazier's judgment of sentence. *See Commonwealth v. Frazier*, 2682 EDA 2004, at *5 (Pa. Super. filed Aug. 6, 2006) (unpublished memorandum).

On June 26, 2007, Frazier filed a timely first PCRA petition, raising claims of ineffective assistance of counsel. The PCRA court denied the petition, and this Court affirmed the denial. *See Commonwealth v. Frazier*, 2612 EDA 2008, at *4-5 (Pa. Super. filed Sept. 23, 2009) (unpublished memorandum).

On January 14, 2019, Frazier filed a second PCRA petition, asserting he had learned of an exculpatory witness statement given to detectives during the initial investigation into the shooting in 2003. Counsel was appointed and filed an amended petition, including a detailed affidavit from the witness. Frazier asserted his petition was timely under the jurisdictional time-bar exceptions for interference by government officials and newly-discovered facts because he did not learn of the witness's statement to police until December 2018, and the exculpatory witness statement to detectives during the investigation was not disclosed in discovery in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Frazier pled that he was entitled to relief because the witness statement was after-discovered evidence that had been unavailable at the time of trial and would have changed the result if it had been introduced. After issuing notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907, the PCRA court dismissed the petition on February 14, 2020.

On appeal, this Court concluded that Frazier had satisfied the requirements of the newly-discovered facts exception and therefore

- 5 -

considered the merits of his claims. However, upon review, this Court found that the witness affidavit merely corroborated the trial testimony and did not undermine an eyewitness account of the shooting itself. Accordingly, this court found that no relief was due because the record supported the PCRA court's determination that Frazier's after-discovered evidence would not have altered the outcome of the trial. We therefore affirmed the PCRA court's order dismissing the petition. **See Commonwealth v. Frazier**, 1064 EDA 2020, at *8 (Pa. Super. filed Jan. 28, 2021) (unpublished memorandum)

On July 12, 2022, Frazier filed the instant counseled PCRA petition, averring that he recently became aware of a previously unknown eyewitness to the crime, Abdu Rivera. Frazier attached an affidavit signed by Rivera to the petition. Frazier summarized the affidavit pertinently as follows:

The day of the crime Rivera was on Westmoreland Street selling PCP.

I had just parked on 2nd St. and Ontario just near the Latin Flavours Bar and I walked down to 2nd and Westmoreland St. There were a couple customers out there, who I served. I saw 2 individuals with black hoodies on standing on Westmoreland, on the side of the bar looking down towards Philip St.

I was out there for literally 5 minutes and then I looked down and saw Man-Man crossing Westmoreland St. towards the front of Jose Oquindo's house. As soon as I saw Man-Man cross over towards Jose's house, I saw 1 of the individuals with the black hoodie started going towards the street and at the same time I saw Man-Man and Jose start walking up the sidewalk on Westmoreland coming up towards the bar on 2nd St.

> I said yo Man-Man what's up, meaning to say hello. At that point, that's when the shooting erupted.
>
> I started running up 2nd St. back up towards Ontario St. and when I looked back I seen Man-Man turning the corner onto 2nd St. he was behind me. Everybody ran up to the Chinese store at 2nd and Ontario. When we got there, everybody was out of breath and asking each other if everyone was ok. I had drugs on me, so I immediately walked back to my car that was parked on Ontario St. and I got out of there.

> He is positive that [Frazier] was not one of the shooters. In fact, he never saw [Frazier] with a gun.

PCRA Petition, 7/12/22, at 8.

The Commonwealth filed a letter response in which it argued the petition should be dismissed as untimely without an applicable exception. Following a response from Frazier, a hearing was held on the issue of timeliness on November 27, 2024, at which both Rivera and Frazier testified. On December 3, 2025, the PCRA court entered an order dismissing the PCRA petition, along with its findings of fact and conclusions of law supporting its conclusion that the petition was untimely. This timely appeal followed.

Prior to reaching the merits of Frazier's claims on appeal, we must first consider the timeliness of his PCRA petition. *See Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014).

> A PCRA petition, including a second or subsequent one, must be filed within one year of the date the petitioner's judgment of sentence becomes final, unless he pleads and proves one of the three exceptions outlined in 42 Pa.C.S.[A.] § 9545(b)(1). A judgment becomes final at the conclusion of direct review by this Court or the United States Supreme Court, or at the expiration of the time for seeking such review. The PCRA's timeliness

- 7 -

requirements are jurisdictional; therefore, a court may not address the merits of the issues raised if the petition was not timely filed. The timeliness requirements apply to all PCRA petitions, regardless of the nature of the individual claims raised therein. The PCRA squarely places upon the petitioner the burden of proving an untimely petition fits within one of the three exceptions.

***Commonwealth v. Jones***, 54 A.3d 14, 16-17 (Pa. 2012) (internal citations and footnote omitted).

The instant petition—filed 15 years after the judgment of sentence became final—is patently untimely. Therefore, the PCRA court lacked jurisdiction to review Frazier's petition unless he was able to successfully plead and prove one of the statutory exceptions to the PCRA's time-bar. The PCRA provides three exceptions to its time bar:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). "[E]xceptions to the time-bar must be pled in the … petition, and may not be raised for the first time on appeal."

***Commonwealth v. Burton***, 936 A.2d 521, 525 (Pa. Super. 2007) (citations omitted); ***see also*** Pa.R.A.P. 302(a) (providing that issues not raised before

the lower court are waived and cannot be raised for the first time on appeal).

Further,

> although this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant. Accordingly, a *pro se* litigant must comply with the procedural rules set forth in the Pennsylvania Rules of the Court. This Court may quash or dismiss an appeal if an appellant fails to conform with the requirements set forth in the Pennsylvania Rules of Appellate Procedure.

***Commonwealth v. Lyons***, 833 A.2d 245, 251–52 (Pa. Super. 2003) (citation omitted).

Even liberally construed, Frazier has failed to plead and prove that any of his claims constitute a valid exception to the PCRA time-bar. Frazier asserts he meets the requirements of Section 9545(b)(1)(ii), i.e., the newly discovered fact exception to the PCRA's time-bar based on a witness affidavit that he claims proves his innocence.

Section 9545(b)(1)(ii) requires the petitioner to allege and prove that there were facts that were unknown to him and that he could not have ascertained those facts by the exercise of due diligence. ***See Commonwealth v. Bennett***, 930 A.2d 1264, 1270-72 (Pa. 2007). "The focus of the exception is on [the] newly discovered facts, not on a newly discovered or newly willing source for previously known facts." ***Commonwealth v. Marshall***, 947 A.2d 714, 720 (Pa. 2008) (citation omitted); ***see also Commonwealth v. Abu-Jamal***, 941 A.2d 1263, 1269 (Pa. 2008) (holding an affidavit alleging perjury did not bring a petitioner's claim of fabricated testimony within the scope of

section 9545(b)(1)(ii) because the only "new" aspect of the claim was that a new witness had come forward to testify regarding the previously raised claim).

Here, Frazier provides an affidavit from "a previously unknown eyewitness to the crime: Abdu Rivera." PCRA Petition, 7/12/22, at 7. In his affidavit, Rivera states that Frazier is a friend of his; he knew Oquindo from seeing him around, but does not personally know him; he was present when the shooting occurred; he saw Frazier that day but did not see Frazier with a gun that day; he did not know Frazier to have any problems with Oquindo; he saw 2 people with hoodies on, whom he did not recognize, shooting at Oquindo; Frazier was with Oquindo when he saw those 2 other individuals shooting; he is positive Frazier was not one of the 2 individuals he saw shooting at Oquindo; and he was never interviewed by police or any homicide detectives. *See* PCRA Petition, 7/12/22, at Attachment.

Frazier filed his petition after allegedly learning from Rivera in 2022 that Rivera had seen the two men in black hoodies shooting at Oquindo that day, as corroborated in the affidavit. However, the affidavit itself is not a new fact. *See Abu-Jamal*, 941 A.2d at 1269; *Commonwealth v. Maxwell*, 232 A.3d 739, 745 (Pa. Super. 2020). The actual "fact" for purposes of Section 9545(b)(1)(ii) is that two individuals with black hoodies were the shooters and that Frazier was not one of the shooters. *See Commonwealth v. Marshall*, 947 A.2d at 720 (holding that an affidavit alleging perjury does not satisfy the

- 10 -

requirements of the newly discovered fact exception "because the only 'new' aspect of the claim was that a new witness had come forward to testify regarding the previously raised claim.").

It is clear from a review of the record that the affidavit is merely a new conduit for information already known by Frazier. The underlying assertion that Frazier was not the shooter is not a "new fact" to Frazier, as that has been the defense theory since trial. The specific arguments that two other individuals were shooting at Oquindo, neither of whom were identified as Frazier by witnesses who knew him, and that Frazier was seen running away from the area of the shooting with no weapon as shots were fired were included in Frazier's first two PCRA petitions. **See** PCRA Petition, 6/26/07, at 4-5; **see also** PCRA Petition, 1/14/19, at 3; **see also id.** at Attachment.

Accordingly, Frazier's allegation of a newly discovered fact based on the Rivera affidavit does not qualify his petition for an exception to the PCRA's time-bar.

As the PCRA court properly concluded Frazier's PCRA petition was untimely and does not fall under an exception to the PCRA time bar, we affirm the PCRA court's order dismissing the petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/8/2026